IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHERYL JEAN SPARKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-14-51-M |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|    Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. Background

On November 9, 2010 (protective filing date), Plaintiff filed her application for benefits. In her application, Plaintiff alleged that she became unable to work on October 3, 2010, due to mental impairments, arthritis in her left hand, and neuropathy. (TR 126, 146,

1

152).

The medical record shows that Plaintiff was diagnosed in August 2006 with bipolar disorder, panic disorder with agoraphobia, and cannabis abuse. (TR 199). In September 2010, Plaintiff was treated at a hospital emergency room after she complained of being depressed due to situational issues and she was observed by family members hitting her head on a wall. (TR 244). A physical examination by the attending physician was reported to be normal with no motor or sensory deficit. (TR 245-246). She was discharged after she calmed down and reported she was just frustrated. (TR 246). In September 2010, she reported to her treating family physician that the Neurontin® medication she was previously prescribed for possible neuropathy was a "miracle drug." (TR 267-268).

In October 2010, Plaintiff sought mental health treatment. She was diagnosed with moderate, recurrent major depressive disorder and unspecified anxiety state, and she was assessed as having a GAF of 50. (TR 209). She was using marijuana on a daily basis at that time, and she reported a history of substance abuse. (TR 210-211). She also reported current drug-related criminal charges against herself and her spouse. (TR 211). She reported she last worked before her children were born in 1979 and had "stayed home to take care of [her] children and her disabled daughter" since that time. (TR 217). Plaintiff was prescribed anti-depressant medication at that time by her treating psychiatrist, Dr. Vaidya. (TR 236-237). However, Plaintiff developed adverse reactions to the prescribed anti-depressant and nerve pain medications in the latter part of 2010. (TR 254-258, 262-264, 266). Dr. Vaidya reported in January 2011 that Plaintiff had not returned for treatment. (TR 278). Plaintiff

2

underwent a consultative physical examination in March 2011 conducted by Dr. Buffington (TR 281-287) and a consultative psychological evaluation in April 2011 conducted by Laurie Clemens, Ph.D. (TR 289-290). Dr. Buffington's diagnostic impression was arthritis, fatigue, joint pain and stiffness, weakness, depression, and difficulty concentrating. (TR 287). Dr. Buffington noted that Plaintiff had decreased grip strength and slow movements of her left hand with swelling and deemed her unable to grip or finger objects with her left hand. (TR 282, 286-287). Dr. Clemens' diagnostic impression was severe, recurrent major depressive disorder, cannabis dependence, possible dementia of unknown origin, and unspecified personality disorder with histrionic features. (TR 290).

In July 2011, Plaintiff was treated at a hospital emergency room after she expressed suicidal plans and attempted suicide by drug overdose. (TR 370-373). She was transferred to a psychiatric hospital under an emergency detention order. (TR 372). Plaintiff's mental status improved with medications, and she was discharged from the psychiatric hospital three days later. (TR 380-382). The diagnosis was major depressive disorder and unspecified borderline personality disorder. (TR 382).

In August and September 2011, Dr. Vaidya prescribed anti-depressant and anti-anxiety medications. (TR 409-410). On December 13, 2011, Dr. Vaidya noted that Plaintiff exhibited slow speech, depressed and anxious mood, and constricted affect. (TR 408). Plaintiff was prescribed anti-depressant and anti-anxiety medications. (TR 408). On December 29, 2011, Dr. Vaidya noted that Plaintiff's medications were continued, her mental status findings were normal, and she reported her moods were even. (TR 407).

3

At an administrative hearing conducted on July 25, 2012, before Administrative Law Judge Rose ("ALJ"), Plaintiff testified she did not have a driver's license, and she had attempted to work for one day in 2008 but the job was too strenuous. She had arthritis in her hands, left worse than right, and she estimated she could lift ten pounds. She had osteoarthritis causing weakness in her back, pain in her hip, and shoulder pain. She had neuropathic pain in her feet and legs which limited her ability to stand, and she had asthma controlled with medication. Plaintiff estimated she could walk for ten minutes, stand for thirty minutes, and sit for one hour. Plaintiff stated she continued to have depression symptoms, difficulty focusing, and tended to isolate from other people. A vocational expert ("VE") also testified at the hearing.

In a decision issued August 30, 2012, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 15, 2010. Following the well-established sequential evaluation procedure, the ALJ found at step two that Plaintiff had severe impairments due to arthritis, organic mental impairment, major depressive disorder, personality disorder, and abuse of marijuana. (TR 12). At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment. (TR 12).

At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work. (TR 14). She could occasionally stoop or crouch, she could not handle or finger with her left upper extremity but could use her left upper extremity "as an assisting hand," she could have "superficial and incidental work-

4

related interaction with co-workers and supervisors," she could "perform simple and routine tasks, and some complex tasks, equating to semi-skilled work," and she could not have "[s]ignificant public interaction" in completing her job tasks. (TR 14).

The ALJ found Plaintiff had no past relevant work and she was "53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed." (TR 17). Reaching step five, the ALJ found that Plaintiff was not disabled as there were jobs existing in the national economy that she could perform, including the jobs of bottling line attendant, housekeeper, and marker, as these jobs were identified by the VE at the hearing to be light jobs that fell within Plaintiff's RFC for work. (TR 18).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the

5

record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Consideration of Age in Step Five Decision

"If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner [at step five] to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005). The Commissioner can meet this burden by either (1) referring to the agency's Medical-Vocational Guidelines ("Grids") or (2) obtaining the testimony of a vocational expert. The Grids "consist of a matrix of the four factors identified by Congress - physical ability, age, education, and work experience - and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983)(footnotes omitted). "Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that a claimant could perform." Id. at 462 (footnote omitted).

Plaintiff asserts that the ALJ erred at step five in considering only her age at the time she filed her application in determining whether she was disabled. The regulations specifically state that the agency "will use each of the age categories that applies to [the

claimant] during the period for which we must determine if you are disabled." 20 C.F.R. §416.963(b). Plaintiff further contends that the ALJ failed to consider whether her chronological age placed her on the borderline of advanced age. Finally, Plaintiff asserts that she would qualify for benefits as presumptively disabled under the Grids at 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.04. Under this rule, an individual of advanced age with a high school education or more, with either unskilled or no prior work experience is deemed disabled.

A claimant qualifies under the regulations as a "[p]erson of advanced age" if he or she is "age 55 or older." 20 C.F.R. § 416.963(e). A claimant aged 50 to 54, however, is a "[p]erson closely approaching advanced age." 20 C.F.R. § 416.963(d). These two age categories are critical. The agency recognizes that advanced age is "an increasingly limiting factor in [a claimant's] ability to make . . . an adjustment [to other work.]" 20 C.F.R. §416.963(a). Accordingly, if a claimant is of advanced age and is limited to only light or sedentary work, the claimant will be considered unable to make the adjustment to other work at step five unless the claimant has acquired skills in the claimant's past work that can be transferred to other skilled or semiskilled jobs that the claimant can perform despite his or her impairments. 20 C.F.R. § 416.968(d)(4).

The agency has provided by regulation that it will

> not apply the age categories mechanically in a borderline situation. If [the claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the agency] will consider whether to use the older age category after evaluating the overall impact of all

7

the factors of [the] case.

20 C.F.R. § 416.963(b). In an administrative ruling, the agency has stated that there are "[n]o fixed guidelines as to when a borderline situation exists . . . since such guidelines would themselves reflect a mechanical approach." Social Security Ruling 83-10, 1983 WL 31251, at *8.

In Cox v. Apfel, 1998 WL 864118, *4 (10th Cir. 1998)(unpublished op.), the Tenth Circuit Court of Appeals held that the ALJ erred by not addressing whether the plaintiff was of borderline age where he was within six months of the next age group. In Daniels v. Apfel, 154 F.3d 1129 (10th Cir. 1998), the Tenth Circuit addressed a similar issue. The court held that "a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence," and in a borderline situation when the claimant's age is within a few days or month of the next higher age category the Commissioner "must determine based on whatever evidence in available which of the categories on either side of the borderline best describes the claimant, and the Commissioner may apply that category in using the Grids." Id. at 1136.

In a more recent unpublished decision, Byers v. Astrue, 506 Fed. Appx. 788 (10th Cir. 2012), the Tenth Circuit reversed and remanded the Commissioner's decision where the court was unable to determine whether the ALJ was aware of a potential borderline situation and the evidence showed that on the date of the ALJ's decision the claimant was five-and-a-half months short of 55 years old.

Plaintiff's date of birth was September 10, 1957. (TR 126). Therefore, on the date of

8

the ALJ's decision, Plaintiff was less than two weeks shy of her 55th birthday. Under the governing Social Security Administration regulations and rulings, the ALJ should have considered Plaintiff as a person on the borderline of reaching the "advanced age" category. 20 C.F.R. § 416.963(e).

The Commissioner asserts that the ALJ did not err in determining Plaintiff's case because the ALJ did not rely on the Grids but instead sought vocational expert testimony and relied on that testimony in finding Plaintiff was not disabled. This argument lacks merit. First, it does not address the overarching issue of Plaintiff's age. Moreover, if a claimant's age, education, work experience, and RFC for work would render her disabled under the Grids, vocational testimony cannot be used to find that the claimant is not disabled. See 20 C.F.R. pt. 404, subpt. P, app. 2 ("Where the findings of fact made with respect to a particular individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled.").

The Commissioner also points to a provision in the Hearings and Appeals Litigation and Law Manual ("HALLEX"), HALLEX II-5-3-2, 2003 WL 25498826. Although the Commissioner argues that this HALLEX provision shows the ALJ did not err in the step five decision, the HALLEX provision supports the opposite finding. According to this provision, which is entitled "Application of the Medical-Vocational Guidelines in Borderline Age Cases," an ALJ must first identify borderline age situations by applying a two-part test in which the ALJ first "[d]etermine[s] whether the claimant's age is within a few days or a few months of a higher age category" and then "[i]f so, determine[s] whether using the higher age

9

category would result in a decision of 'disabled' instead of 'not disabled.'"

If the answer to both of these questions is "yes," then the ALJ uses a "sliding scale" approach for determining a claimant's age category. "Under this approach, the claimant must show progressively more additional vocational adversity(ies) - to support use of the higher age - as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." Such vocational adversities may include: additional impairments which limit a claimant's remaining occupational base, a marginal ability to communicate in English, or a history of unskilled work in one isolated industry or work setting. "Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age - even when the time period is only a few days. The adjudicator need not explain his or her use of the claimant's chronological age."

In this case, using the "advanced age" category would result in a finding that Plaintiff was presumptively disabled under 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.04. However, there is nothing in the ALJ's decision to indicate that the ALJ considered applying the "advanced age" category before determining that Plaintiff was not disabled. Moreover, the ALJ wrongly determined that Plaintiff's age category was based on her age at the time she alleged her disability began, rather than at the time of the ALJ's decision. Under these circumstances, there is not substantial evidence in the record to support the ALJ's decision. See 20 C.F.R. § 416.1453(a)(ALJ "shall issue a written decision that gives the findings of fact and the reasons for the decision").

Assuming, as Defendant Commissioner suggests, HALLEX II-5-3-2 should have been applied, or was applied, in determining which age category to apply in Plaintiff's case, the ALJ found several exertional and nonexertional limitations, including Plaintiff's inability to interact with the general public, that further limited her ability to perform the requirements of light work. These limitations constituted additional vocational adversities warranting consideration by the ALJ of whether the "advanced age" category should be applied. Additionally, because Plaintiff was only a few days shy of her 55th birthday, the amount of additional adversity required to justify use of the "advanced age" category would be minimal. See HALLEX II-5-3-2, 2003 WL 25498826.

Although Defendant Commissioner argues that the ALJ was not required to explicitly address the borderline age situation, the HALLEX provides that "[a]bsent a showing of additional adversity(ies) . . . [t]he adjudicator need not explain his or her use of the claimant's chronological age[.]" This provision indicates that where, as here, additional vocational adversities exist, the ALJ must address the borderline age issue and provide reasons for the age category decision. See Phillips v. Astrue, 671 F.3d 699, 706 (8th Cir. 2012)(although "detailed findings in borderline [age] situations are not necessary[,] . . . we simply cannot complete [the required judicial] review without some showing as to the Commissioner's consideration of applying the higher age category, which he indisputably is required to do").

The ALJ's errors in evaluating the critical age in this case warrant a reversal of the Commissioner's decision and a remand for further administrative proceedings. In light of the recommendation for reversal and remand, it is not necessary to review Plaintiff's second

argument that the ALJ erred by failing to discuss uncontroverted or significantly probative evidence in the record.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner and REMANDING the case to the agency for further administrative proceedings consistent with the findings herein. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before    December 22nd , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this    2nd     day of    December    , 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE